Good morning, Your Honor. May I proceed, Your Honor? Oh, sure. May it please the Court, my name is Reid Feigl. I represent the appellant, Stephen Gardner. And with the Court's permission, I'd like to reserve five minutes for rebuttal. You may. Just watch the clock. In this appeal, Your Honors, Mr. Gardner is asking this Court to do no more than to apply this Court's precedents in Crozier, Roth, and Spilotro, which since 1982 have guaranteed criminal defendants who've been subject to ex parte pretrial restraints on their assets with a prompt post-deprivation hearing consistent with the requirements of Rule 65 of the Rules of Civil Procedure. Now, why isn't this a 41G? Didn't you move under 41G? We moved both under 41G and under this Court's precedents asking for the removal of a criminal defendant. Under 41G, can't you get a hearing under that process? We can, Your Honor. Why isn't that the remedy? I'm sorry? Why isn't that the remedy rather than Rule 65? Because this Court has held in a series of cases going back to 1982 that the proper remedy for the improper imposition of a pretrial restraint on a defendant's assets is a hearing that is specifically provided for under Crozier and its progeny. Going back to the Crozier case, what this Court held unambiguously was that the Federal force picture statutes were unconstitutional because they failed to provide adequate procedural safeguards for the imposition of these restraints. And the Court essentially saved the statute from unconstitutionality by requiring a Rule 65 hearing. And that's been the law in this circuit for almost 25 years, and they're really routine fixtures of the criminal justice system. But were those cases arising out of a warrant, or were they just the act? In other words, 41G deals with where the seizure has been pursuant to a warrant. Were those cases arising out of that context? Most of those cases, they're different. But most of them involve pretrial restraints issued pursuant to Section 853E. Right. So that's my question, whether there's a difference. Since this was a warrant, whether the process, to the extent you're entitled to a hearing, and there is law in that regard, these were seized, at least the one was seized. I'm not sure about the lease pendants, whether that would be a seizure or not. But in any event, whether... Well, how do you reconcile Unimax? I think Unimax doesn't need any reconciliation. It is not a case that overruled 25 years of jurisprudence in this circuit. Unimax was a post-conviction Sixth Amendment claim by a corporation that was forced to go to trial without any counsel at all because the government had restrained all of its assets. And in the context of that post-conviction review, looking at both, admittedly, the Fifth and the Sixth Amendment issues, what the Court held was that because a corporation does not have access to CJA funds, it can't get public funding for its defense, that the Court had an obligation to hold a hearing under the Sixth Amendment to determine whether or not some of those assets had been improperly restrained. And the Court then had a post-conviction determination that because of the deprivation of those assets, there was a Sixth Amendment violation, as well as Fifth Amendment concerns. But if you go to the decision in Unimax, it never questions Crozier. It never suggests it's reconsidering it. There is no indication whatsoever that the Court even reconsidered the obligations that were imposed under Crozier, Rapinski, Spilotro. So your view is because it was a corporation, because it was post-conviction, because it was really more a Sixth Amendment rather than a Fifth Amendment claim, they are totally distinguishable? Absolutely. And the notion that Unimax, without addressing Crozier or addressing the requirements of Rule 65, somehow, as the government says, overruled its sub salentio, is frankly just an untenable position. And unfortunately, the District Court accepted that. And that was the basis for its refusal to go into the merits at all of Mr. Gardner's challenges to these restraints. What's your position with respect to the List Pendants? I think the brief argues well the issue of the sale of the Bear Stearns assets. But the List Pendants is another matter. As you know, Justice Rehnquist, in his concurring opinion in, let's see, I believe it was, I'll find it in a second here, Connecticut versus Doar, exactly, made it clear that, at least from his perspective, that a List Pendants really just notifies people. It really doesn't affect any rights. And therefore, there is no requirement for a hearing. The reality is that in the real world, a List Pendants, of course, makes it so you can't alienate the property. You can't get loans, at least on a commercial basis. On the other hand, if it were removed, all it does is to hide things from people because the case is still there. Anybody who's aware of it is not going to make a loan, buy the property. What's your response to that? Well, there's a couple of responses. First of all, with all respect to the late Chief Justice, that was a concurrence in his views, did not carry the majority of the Court. Second of all, I think the law is clear, both from Supreme Court precedents and from numerous State and Federal Court precedents, that List Pendants implicate the Due Process Clause. The district court held that it had no effect, that there were no due process protections triggered whatsoever. But the law is very clear. We think that a List Pendants is a restraint on property that constitutes a deprivation within the meaning of the Due Process Clause. How do you address, counsel, my point that let's just say you are granted a hearing and say the district court finds that there are due process implications here. It removes the List Pendants. The case still proceeds. And anyone who wants to loan money against the property, any title company that looks at the record, it's going to have the same effect as a List Pendants. So all you're really doing is, in effect, defrauding or deceiving a third party that's not given notice of the case who might not otherwise know about it. Well, absolutely not, Your Honor. What the Federal Forfeitures Laws distinguish among, with respect to a defendant's asset, are forfeitable assets that can be restrained pretrial and substitute assets which can only be restrained after conviction. If this court, if the district court were to determine that the List Pendants was improperly placed because the government couldn't satisfy its probable cause obligation to demonstrate that the property was traceable to the proceeds of the specific crimes charged in the indictment, it would then not be forfeitable assets. And anyone who purchased that interest in reliance either on the district court's finding or just because they weren't aware of the indictment would be a bona fide purchaser for value and would have superior title to the claim of the United States. So it's not a meaningless gesture at all to remove that List Pendants. It would have very significant consequences to Mr. Gardner. What is the, you just touched on it, but I'd like to make clear what you view the nature of the hearing is. What does the, what has to be shown and who has the burden of proof on it at this hearing that you're requesting? Well, I think we've made all the showing we need to make. I would encourage the court, I know this is a busy panel, but to review our motion to determine exactly what our claims were and what the supporting affidavits were. I do. I want to hear you say it now. But we demonstrated, first of all, that there'd been a seizure. Both the Bear Stearns assets is really quite simple. They're, they not only froze the assets, but they took the additional step ex parte without any opportunity for us to appear or to contest it and actually transferred it to the United States government. What is the, what is it? So, so in terms of, you just said that if a bona fide purchaser relies on the district court order, what is the district court order going to say? That the government has failed to prove what it has to prove at trial or that doesn't have probable cause to believe it can prove that the Bear Stearns and the properties were the fruits of the unlawful, what is it that you believe the district court has to find? In order for the restraints to be removed? Correct. What the district court would do, and the district courts do this every day, maybe not every day, but certainly routinely in this circuit, is to hold a probable cause hearing in which the government would have the burden of proof of demonstrating under the Rule 65 standards that the restraints that were placed on Mr. Gardner's assets were appropriate because the specific assets restrained constituted the proceeds of the specific crimes charged in the indictment. If the government can't satisfy that probable cause standard, the district court would, in effect, be making a ruling that clearly will be a trial and there'll be a final determination, but at least in terms of who has putative title and who has control over this property, the title which exists with Mr. Gardner right now would be essentially paramount to the government's claim. And Mr. Gardner would then be free, for instance, to get a refund of the Bear Stearns' assets and to use those to prepare his defense and to provide for his family, and he would also be free to sell the properties. But really, the question is here, Your Honor, is who has title to these properties? The United States, based on the ---- Well, let me follow up there, if I could. Other than the issue of whether these properties were the fruits of the alleged misconduct, how much of this hearing is going to entail a mini-trial of the underlying claim as to whether your client's conduct was unlawful, whether there was a criminal violation at all? Well, I think the scope of the hearing is fairly well established under the precedents. The government would have the burden of proving, again, by probable cause standard, that there were crimes charged that resulted in proceeds, and it would have to demonstrate that the specific assets it had restrained either are the proceeds of that specific criminal conduct or can be traced on a dollar-for-dollar basis to that conduct. What would be the standard of proof? Now, the second half of that I understand. It's the first half that gives me a little bit of pause. Do you have to try this case twice? Absolutely not. Can you try it once for this hearing? No, Your Honor. The ---- There is a probable cause standard, but that's a significantly reduced standard from what's required at a criminal trial where the standard is burden of proof. And these are fairly minimal hearings. They last several days. The government typically relies on the indictment and on hearsay evidence from agents. They do need to demonstrate, however, that there was a crime committed that created proceeds. Because without proceeds, there's no basis for the forfeiture. What's the standard of proof that the government needs to meet in that kind of a hearing to show that the proceeds were the result of illegal activity? I think it's probable cause standard. We would concede that ---- So it's fairly minimal, then. It's a very low burden. That's right. But it's a very important burden, because right now what's happened in this case is the prosecutor, ex parte, relying on facially deficient warrants and affidavits that I think this Court could determine on a de novo review are insufficient. And that's been done without any judicial review whatsoever. And that is plainly inconsistent with this Court's precedence under Crozier, Spilotro, Roth. Specifically, those cases held forfeiture statute unconstitutional because those procedures were lacking, because a defendant didn't have the opportunity under the statute for a prompt post-deprivation hearing in which he could have a trial. In the case of the Bear Stearns funds, that was ex parte. Is it true in the Liz Pendens, was there notice given in that? Absolutely not, Your Honor. There was no controlling statute. There was no advance notice. The government just filed these without any judicial approval, without any notice to the defendant. We got notice after the Liz Pendens were filed the same way, I guess the world did. And so the warrant governed the Bear Stearns seizure, but not the Liz Pendens? That's correct. The warrant was issued close to the time of the return of the initial indictment. There was then a superseding indictment which identified the main properties that are subject to forfeiture, and the Liz Pendens was attached in connection with that instrument. All right. Do you want to address the jurisdictional issue briefly? Yes, Your Honor. We think that this Court clearly has jurisdiction under its precedents, again, going back 25 years, which have held specifically because of the reason that the Court found the statute allowing for the imposition of pretrial restraints unconstitutional, that they were injunctive in nature. That's why a Rule 65 hearing was essentially appended to the statute. And it's held in a number of contexts that any ex parte pretrial restraint placed on a defendant's assets are injunctive in nature and, therefore, are appealable on an interlocutory basis under both 1292 and also the Collateral Order Doctrine. Do you have an answer about Liz Pendens as well? Absolutely. A Liz Pendens has essentially the same effect. The government concedes that the reason they filed the Liz Pendens was to restrain or enjoin the defendant from being able to alienate that property. So in terms of practical effects, which is the test that this Court applies, it has the practical effect of an injunction, and it is appealable as an injunction. Do you have any case law that suggests that, in fact, an injunction for these purposes, an injunction of Liz Pendens for these purposes, is substantially equivalent to an injunction? Yes, Your Honor. There are a number of cases that hold that Liz Pendens are appealable as injunctions. I believe it was the Floyd case in the Fifth Circuit. Floyd? Floyd, yes. Why don't you save your, if you want to pause there and save your rebuttal time, which you're about into, if you have any other authorities that you want to add to that, you can do so. I believe if you look at the Third Circuit case in Chrysler, there have been a number of cases that in the context of reviewing Liz Pendens have determined that they're sufficiently injunctive in nature or sufficiently collateral to the merits of the underlying litigation that they're appealable on an interlocutory basis. And I believe there's others cited in our briefs. Thank you, Your Honors. Good morning, Your Honors. Good morning. My name is Eric Best. I'm an assistant United States attorney, and I represent the appellee, the United States of America, in this interlocutory appeal, which implicates the government's ability to protect assets that are shown or believed to be subject to forfeiture, protect them from dissipation, transfer, and, you know, and moving them beyond the jurisdiction of the court. But in this case, counsel, what they're really saying is the government needs to provide some evidence that, in fact, these particular assets do, in fact, meet that standard. What's your objection to having a hearing to have that rather minimal evidentiary standard met and some showing made that these properties in Maine and the Bear Stearns accounts were, in fact, proceeds from illegal activities? Your Honor, that showing has already been made to two separate bodies. A grand jury found probable cause to believe that the properties in Maine were subject to forfeiture as proceeds of fraudulent activity. And a neutral and detached magistrate judge in the district court found that there was probable cause to believe that the Bear Stearns accounts contained proceeds of criminal activity, again, fraud and money laundering. And what about the Maine properties? And the Maine properties were, that finding was based on the grand jury's finding of probable cause. So there's been no judicial review of at least the Maine properties? That's correct, Your Honor. The grand jury has found the probable cause, and based on that, the United States filed the notices of lispendence, which were not orders from the district court. So the government's position is that without any judicial review, it can file a lispendence against properties based on a grand jury finding, which is controlled by the government. And it can seize and convert into cash, liquidate securities based on a warrant where the standard is simply, is quite minimal and there's no contested evidence or notice to the target. That's the government's position.  With the first issue, the lispendence, the answer is yes, that that's the government's position because it is simply a notice to the world that the government has a claim on this property. And I think that as the late Chief Justice Reikwes pointed out, which was a critical point in the Connecticut v. Dorr case, because the Supreme Court had previously upheld a lispendence statute under a constitutional challenge. And so it was important for the court to distinguish a lispendence versus a prejudgment attachment, which was the mechanism that was at issue in Connecticut v. Dorr. But it is used commonplace, not just in criminal cases, but in civil cases. It ties up the property. It prevents, it notifies third parties that there is a claim on this property. And then the law of lispendence. And it makes it very difficult to sell it because basically it's a cloud on the title and you can't get title insurance unless that gets cleared. And the defendant still retains the right to sell the property, to use the property, to run businesses on the property, to enjoy the property. All the other attendant rights of ownership remain. And as the Supreme Court pointed out in the Goode case, that is a mechanism by which the government can try to protect this property, which is believed to be subject to forfeiture. So it can actually be available if and when there's a conviction and a forfeiture order. But in the real world, counsel, wouldn't you agree that it, I suppose you might be able to live in it, it might be able to rent it. But other than that, you really can't do anything with it. I know it's nice what the cases say on this, but the real world is that's what happens. What would you say to your opposing counsel's comment that the benefit of having a hearing with respect to the lispendence is that if the court finds that, in fact, there is no trace, there's no way to trace illegality to the purchase of the main property, that, in fact, anybody who looked at this would find there was no tie to the property. A BFP could purchase the property without problems. Do you agree with that? I think that the law of lispendence would still control. And that is that if the government prevailed on its forfeiture claim at trial and obtained an order of forfeiture, that any third party who obtained the property with actual notice of that claim would still would take that property subject to the government's forfeiture claim. The lispendence statute in Maine, in particular, is simply a mechanism where it actually gives third parties notice of this claim. And, in fact, the common law doctrine of lispendence would have been even harsher. Even if they didn't have actual notice of the claim, they would take the property subject to the prior forfeiture claim. And I believe if the government prevails at trial and obtains an order of forfeiture, I don't believe that a bona fide purchaser for value will necessarily be able to defeat that forfeiture order. What I'm saying, though, I think what counsel indicated was if the trier, in this case, probably the district court, determined that, in fact, there was no showing at the level of probable cause that the defendant used illegal proceeds to purchase this property, that that finding in and of itself would remove the taint from the property and the likely ability of the government to be able to ultimately sell it in a forfeiture action afterwards. Do you agree with that? I don't, Your Honor. I think that even if the lispendence was removed in some mechanism, I think that the law of the law, the common law doctrine of lispendence would still allow the government to obtain a superior interest in the property if it obtained a conviction after trial. Even if the lispendence had been removed and if the record showed that there was no probable cause standard showing that the property had been purchased with improper funds. Well, if there was a conviction and a forfeiture order at trial, there would clearly have been a finding by a jury. Tying it to that property, but just say that stipulating that, for a moment there, arguing that say the defendant hypothetically gets convicted, but there is no finding that there was improper use of funds to purchase the main property. Your belief is because of the conviction, no matter what the source of the funds, you're going to go get the property anyway. No, Your Honor. The government will seek and would need to seek an order of forfeiture specifically for that property and would need to prove to a jury that that property is property that is a proceeds traceable to a fraud offense, in this case. So the government will still need to prove this to a jury and will need to demonstrate to the jury the traceability and if it's able to do that and a jury finds an order of forfeiture is appropriate, then it can act on that order of forfeiture. I have two questions. I still haven't answered your last one. Well, that's okay. If you, let's suppose you proceed, the government goes forward, there's been no judicial hearing other than the magistrate judge's issuance of the warrant and the government may prove, let's assume it proves that there was criminal activity, but the proceeds of that criminal activity did not wind up in the Bear Stearns account, nor did it wind up in the main properties. So therefore, the government under those circumstances would not be able, as I understand your last answer, to forfeit those particular assets. Is that correct? The only theory the government would have would be a substitute asset theory. It would not be a direct tracing theory. Let's suppose, let's rule out the substitute. So now, in the meanwhile, the defendant can show that it lost business opportunities or the stock that was liquidated tripled in value because it was, you know, an Apple and this iPhone took off and he has been deprived of that stock. What remedy does the defendant have, if any at that point, to recover the loss of use or the lost value? Your Honor, I don't know if the law, because this issue wasn't addressed below, so I don't know specifically if the law would allow him to make a claim for lost or damages essentially. But presumably, that would be the defendant's claim, that he would say, not only did I, did the government restrain this property improperly, it actually should pay me the difference. But one of the issues, to the extent we're in an injunctive process or concept, is irreparable injury, and often the injury is found not irreparable if it's compensable in damages. But I, in looking through the briefing and whatever, didn't see anything to suggest that there was compensation available. It's not like a, I'm not, unless it's a Bivens type of theory, but you're not aware of any particular claim that the defendant would have for loss of use that could translate then into a damage claim. I, the defendant may well have such a claim, but I can't answer Your Honor's question specifically that he does or does not. He may well have a claim for damages suffered in the event he was found that the property was erroneously deprived. My second question then, and Judge, I may be stealing Judge Clifton's thunder on this, but he did, Judge Clifton, raise the issue of the nature of a hearing. Assuming that a judicial hearing is required, what, in your view, is the nature of that hearing and what burden is on the government, both as a matter of proof and just a matter of trying its case in a mini trial before the big trial? What would happen in that hearing? Under the Supreme Court's decision in Monsanto, the burden of proof, I think, is an easy answer, and that is it's a probable cause standard. The Constitution does not prohibit the pretrial restraint or seizure of assets in any way so long as there's a finding of probable cause, and so that's clearly the standard. What would the hearing look like? Your Honor, I think the appellant would like to see a full-blown mini trial, lasting several days is what he would like to see. The government submits that that is both unnecessary and an extraordinary burden on both the district court, which is already going to have to conduct a trial in the first, in this case anyway, as well as on the government. There has been a finding of probable cause that there were offenses committed, that finding by the grand jury should not have to be re-presented to the district court to make a finding of probable cause. I think the Jones case out of the Tenth Circuit and the Farmer case out of the Fourth Circuit talk about the type of hearing that would be required, and I'd ask this Court, if a hearing is required, that it be limited to this issue of traceability, that there's already been a grand jury finding of probable cause that offenses were committed, and that the question simply is, is the property that was restrained traceable to those offenses? And that makes sense because what is being imposed on the district court and on the parties is an obligation to conduct additional process, to provide additional process to the defendant, even though there's already been a finding either by a magistrate judge or a grand jury. And so that process should match what the deprivation is in this case, and I think that it would be not appropriate to require a full-blown reinvestigation of what the grand jury considered, what was the reason for the belief that there was a crime that was committed in this case. Did the grand jury make a probable cause finding as to particular assets or just as to the nature of the crime? Grand jury made a particular probable cause finding that the main properties were subject to forfeiture, so there's a specific identification of those properties in the indictment, and a finding that there's probable cause to believe proceeds of approximately $50 million are forfeitable upon conviction in this case. And based on the affidavit submitted to the magistrate judge, the government demonstrated probable cause to believe that a small portion of that $50 million, approximately $384,000, was located in that Bear Stearns account. The government submits that this court should analyze whether or not a hearing is required under this court's decision in the Unimex case. And the reason is that the Unimex court took a – took the position that a hearing in that case was required because the defendant had made certain showings, certain showings that its private interest in requiring more process was significant, it needed the money to pay for counsel of choice, and that there was a reason to question the probable cause findings. Do you disagree with your opposing counsel's characterization of Unimex? He said it was a corporation, it was post-conviction, post-hearing, I guess it was post-conviction, he indicated. Yes. And that you have an entirely different factual pattern there. Do you agree with that? No, Your Honor. I would submit that Unimex is actually closer – on the pertinent facts, it's closer to this case. Unimex is a seizure warrant case. Crozier is not a seizure warrant case. It's an 853E restraining order decision. Unimex spent – and if you read the opinion, Your Honor, it's based on both the Fifth Amendment and the Sixth Amendment. It is not simply a Sixth Amendment case. It is a Fifth Amendment claim that the corporation said, I need more process, I need additional protection before my assets are restrained pretrial. And the court of appeals went through what was that interest that the defendant was claiming. And there's an important point of the opinion where the panel says that if the defendant actually had right to counsel, appointed counsel, then it's really – there's such a minimal interest at play here that there probably isn't any need for additional process. So it actually had to go through the process of figuring out could a corporation get appointed counsel. It concluded it could not. And so absent some sort of funds, it would have no representation at trial. And that's all the government says the defendant has to do in this case, Your Honor. And that is not simply say, I need money to pay for counsel of choice, but to make some kind of minimal showing to the district court that it needs the money to pay for – he needs the money to pay for counsel of choice. I mean, there's a Fifth Amendment right here, too, not just Sixth Amendment. No, exactly right, Your Honor. And the Fifth Amendment right is once there's been a deprivation – or the question is has there been a deprivation of property with regard to the Bear Stearns? Yes, there has. With regard to the Lewis-Pendens, the government's position is no, there has not. And we would ask this Court to consider the registered decision. What process is due to the defendant? The Matthews v. Eldridge balancing test then comes into play, and there are three factors. What's the private interest at stake? What's the risk of an erroneous deprivation? And what is the government's interest in not having additional procedures, including any administrative burdens?  If it is simply the right to have access to money pretrial, that was already decided by the Supreme Court in the Monsanto case. The Supreme Court said that it is not a violation of the due process clause to restrain assets pretrial so long as there is a finding of probable cause. And that's exactly what took place in this case. Both the grand jury – again, the Lewis-Pendens is not a restraint, but there was a grand jury finding of probable cause. And the seizure warrant was based on a finding of probable cause. So the question is, what else, what more is there other than the restraint of the money that the defendant has suffered? And he's raised two things. One is his right to counsel of choice. He wants to deliquidate these assets and pay this money to his attorneys, and he wants to pay for $20,000 a month in living expenses. The district court simply asked the defendant to come forward with some evidence that that – that those two things are in play. And that's what district courts do routinely. There is no right in Federal court to an automatic evidentiary hearing simply because the defendant asks for one. In the context of, for example, suppression hearings, the defendant typically has to submit some sort of evidence by way of declaration or otherwise that there's a reason to believe that his constitutional rights were violated in the seizure of evidence. This is under 41G. Under 41G, correct, or even if there was a Miranda issue. Again, sort of the process. But here. In this case, this would be a rule – the government thinks that this really was a motion brought under Rule 41G. I'd ask this Court to look at the Anderson case, which explains, you know, that it's not the form of the motion, it's the substance. What is the defendant really looking for? And in this case, the defendant is looking for the return of property. And the law – Do you think it is or isn't a 41G motion? I believe that it is a 41G motion, and therefore, the defendant must comply with the requirements of Rule 41G, which, as I understand it, Your Honor, still has to come forward with some predicate factual finding, some predicate facts to lead the district court to conclude there needs to be a hearing here, there needs to be an evidentiary hearing at which I decide certain facts because they matter. And absent that, there really is no need to impose additional burdens on the – on the Court and on the government to present its case pretrial and on the district court to conduct what – what appellant wants to be a multi-day hearing in a fairly busy district. So the defendant had that opportunity to show that – An institutional problem. The rights of a defendant don't get sacrificed because the district's busy. Absolutely not, Your Honor. You're absolutely correct. And the question is, what are the rights of the defendant in play here? And the defendant needs to show that he has some rights at stake here. And the right he's claiming, again, is twofold, the right to pay for his counsel of choice and the right to pay for his personal expenses. And the district court gave the defendant that opportunity two different times. Show me some competent evidence that shows that you don't have any money to pay for counsel of choice. Defendant failed on both occasions to come up with evidentiary – some – some evidence to show that – that there was a need for an evidentiary hearing. And, in fact, denied the motion without prejudice. The defendant can go back in front of the district court today and say, now here's my current financial condition. I need a hearing because I need to protect my right to counsel of choice. And the district court made it very clear. And living expenses. And living expenses was the other – the other point. And that – and the district court could decide that today. I see I've run out of time. If the Court has any questions about the other issues, I'd be happy to answer them. I think we're okay. Judge Clifton? I'm fine, thanks. Thank you. Thank you. You've already stolen by thunder. I'm sorry. Judge Smith, let me just bring one other case to your attention. The Beefy King case, I believe, which was cited in our brief, we believe is a case of the Fifth Circuit that held that an appeal from a lisbendence is an injunction. I think we should be very clear about what the government is arguing here. It could not be clearer that they're asking this government, this panel, to overrule 25 years of this Circuit's precedence about what type of hearing is required following an ex parte pretrial restraint of assets. What this Court has held, and it held this because it needed to make this finding to save the statute from being unconstitutional, is that pretrial restraints on assets are like temporary restraining orders. And in the civil context, it is the burden of the person that sought the temporary restraining order to come forward and demonstrate why it should be turned into a preliminary injunction. That's exactly the analogy that for 25 years has applied in this Court, and that is exactly what the government is asking this Court to overturn by imposing all sorts of new burdens on a defendant to demonstrate that they need the money for counsel fees or they need the money for living expenses. That's never been a requirement, and it shouldn't be one here. As a matter of fact, Mr. Gardner did demonstrate in the public part portion of his filings that he needed substantially more money than he had available to him to fund his defense. So if indigency was a requirement, there certainly was a basis for the judge. Why do you say, counsel, to your opposing counsel's comment that your client twice had an opportunity to present evidence either by way of declaration to respond to the need for attorney fees and for living expenses? Is that correct? The judge did give us that opportunity. We gave the judge an ex parte filing because what the government had accused us of is essentially concealing assets. They made completely unfounded allegations that Mr. Gardner had millions of dollars hidden in various accounts that were unaccounted for, and that he had those funds. That was the case. You responded to those allegations, or you didn't respond to those? We did. We demonstrated to the district judge in an ex parte filing that this, you know, we have to try a case before this judge. Credibility is important. Right. So we gave him an ex parte affidavit from Mr. Gardner that demonstrated what Mr. Gardner's assets were, but we asked him not to look at it. The reason we asked him not to look at it was because we don't believe indigency is a requirement here. It never has been. There's been no case law that says what it means. And we, frankly, for a number of reasons, wanted to preserve our position that Crozier is still the law. Second of all, that we didn't want to get into a hearing about how much money should be freed up in order to mount his defense. To the extent that these are substitute assets and not properly restrained, they're his to do whatever he wants with. And if he wants to get, you know, 20 law firms to represent him, he has that right if these are his funds. So, yes, we have the opportunity, but we don't think it's a requirement. We filed a motion based on existing law. We complied with all the procedural requirements. And your view, if this court ultimately decides to direct the district court to hold the kind of a hearing that we've been discussing, how have you really gained anything? I mean, you've got a probable cause standard. The judge has already invited you to provide information about what assets your client has, his ability to pay his attorney fees, his ability to handle his living expenses. What are you gaining? Well, we don't think that indigency or proof of his assets would be an element of that hearing on remand. We would gain a tremendous amount. First of all, Your Honor, we would be able to demonstrate that these assets which have been restrained are not properly restrained. The government's theory on this is extreme, almost to an absurd position. Their position is that Mr. Gardner, Princeton-educated, Harvard-trained MBA who spent his life working for public corporations, every nickel of compensation that he earned from Peregrine is tainted because, allegedly, he conspired with others to commit securities fraud. So the theory is, is that by having an agreement with one over at Apple... I don't know what education has to do with criminal activity. I mean, some of the people in prison have pretty good educations. No, but the point is that this is not somebody who is dealing drugs. This is not somebody who's an arms merchant. This is somebody who went to work every day at a legitimate corporation. His compensation was determined by a board of directors based on his performance. I trust that's not the standard. Well, no, Your Honor. But the question is, is whether the government can prove that the money he received from Peregrine, his salary and the sale of stock... So bottom line is, in the two opportunities the district court has already provided to you, you feel like the burden is on you to prove almost the negative. Whereas, in the hearing that you're asking for, it's the government's obligation to show that the main property is tainted and the Bear Stearns account is tainted. Is that right? Exactly, Your Honor. And this is a fundamental point because... I think we have it. Thank you. Judge Clifton, did you have any questions? No. Okay. Thank you, Your Honor. Thank you very much. Counsel appreciate the argument. This case is well argued and is submitted.
judges: Fisher, Clifton, Smith